Good morning, please be seated. Welcome to the Ninth Circuit. We are pleased to be with you today, and I'm happy to be sitting with my colleague, Judge Sanchez. Both of us welcome Judge Ezra, who's joining us from the District Court, who's currently assigned in Texas. Thank you for being here. Thank you so much for the honor. All right, we have two matters for argument this morning. On the first one, I just want to clarify, it looks like both sides in the Feldman v. Facebook case are splitting time, is that correct? All right, and then the clock will just set you for the time that you've agreed to, so we'll start with Feldman v. Facebook, and I think that Mr. Jan, you've got seven minutes. Good morning, Your Honors. My name is Kendrick Jan. I represent the appellants in this matter, Feldman and Mahaney. It's been exactly a year since we were here last. We appreciate the opportunity and the privilege of being here. May it please the Court, the party's briefs in this matter describe the proposed settlement in terms of gross recovery, in terms of percentage of recovery, in terms of per capita recovery among class members, and percentage of aggregated statutory damages and individual statutory damages. That's not the point. The point here is whether or not the District Court analyzed this settlement consistent with its duties under Hamlin and under E-2. It did not. To survive appellate review, the District Court must show it has explored comprehensively all factors and must give a reasoned response to all non-frivolous objections. Among other concerns, the Court must examine the Hamlin-Churchill factors, including strength of the plaintiff's case, risks and costs of further litigation. Counsel, we're very aware of the Hamlin factors. Why don't you jump to the, what did the District Court do wrong? The Court did not itself analyze the Hamlin factors. If you look at the Court's preliminary order and the Court's final order, you will find that what it did was adopt the analysis of the parties. Mind this. Class counsel is a fiduciary until there's a settlement. And it becomes, at that point, its interests are not equated with the interests of the  At that point, the Court becomes a fiduciary for the class. The fiduciary cannot adopt the analysis done by class counsel. It is the Court's obligation to do its own independent analysis. The Court has to show in its order that it has comprehensively explored 23E2 and the Hamlin factors. Simply saying it has done so is insufficient. The rule is, and this is a quote, a district court must set forth sufficiently detailed consideration of the most relevant factors to allow for a meaningful review on appeal. It simply did not. So your, so your view is that because it agreed with one side's arguments, it substituted that party's analysis for its own? I'm struggling to understand your argument. Forgive me. I want to be clear. The analysis, and I'll go right to a significant point. The analysis that class counsel provided the Court, the analysis the Court relied most heavily on was, included zero best day in court number. It did not analyze the breach of contract issue in terms of dollars and cents. And as to statutory damages, and I'm going to quote what class counsel said, if per person damages are awarded, the maximum recovery would be astronomical. That figure cannot be used to estimate what plaintiff, if successful, could actually collect. However, given the strong possibility of a large due process damages reduction on this record, it makes sense to factor it into the maximum possible recovery. In addition, a further discount is appropriate to reflect the risk the VPA claim faces on the merits. Well, our Wakefield case allows the district court to consider due process considerations. Does it not?  And I appreciate that you said that. Wakefield does absolutely allow the Court to do that. What must the district court do pursuant to Wakefield? Wakefield tells us the district court itself must consider the magnitude of the aggregated award in relation to the statute's goals of compensation, deterrence, punishment, and the prescribed conduct. It has four factors, and it's conjunctive. The Court itself must do that analysis. Four factors. The Court itself didn't consider one. Class counsel didn't describe any such analysis. Well, there was this gross oppression. I don't read Wakefield to direct the district courts to calculate a statutory maximum damage. In context, the case is talking about if you are going to think of statutory damages, in some extreme circumstances, there may be due process considerations to take in mind. Your Honor, I agree with you. But if you're going to do that, and it adopts class counsel's analysis regarding due process I mean, our Lane case tells us that sometimes trying to scale up to statutory maximums can be contingent and, you know, a little speculative. You know, if you just say, okay, here's the size of the class, we're going to assign a statutory award for each person, we're going to scale it up, and now we're in the billions of dollars, not only might there be due process issues with that, but it's also very contingent on many factors. And so courts don't have to do this. I agree with you. This is what happened in Lane. It's quite interesting. In its final approval, or forgive me, in its order preliminary approving the settlement, the district court notified the parties that final approval will require a sufficient showing that terms of the settlement are reasonable, specifically in light of the claims under the VPPA and the apparent availability of statutory penalties thereunder. We're not concerned with statutory penalties. We just want to know what the VPPA says. And if the court, if the court is going to adopt a position that the matter is compromised by statutory, or forgive me, by Wakefield, if it should be adjusted consistent with Wakefield for due process, it must do. And I invite your attention to Wakefield. This is what the court says. It must look at those four factors. Must. It didn't. Neither did class counsel. Okay? So adopting their work and their word is entirely insufficient. Okay, forgive me, I'm going to try and jump to one other point. Regarding non-frivolous objections, if there's some confusion about what we objected to, I'm getting very tight, forgive me, I want to clarify it in this way. Our objection said, please consider this case in this way. What the court did was violate Hamlin. It violated Wakefield. It did not give this court a showing of particulars as to why it came up with this position. If there's this amalgam of factors and this gross approximation, it still needs to tell this court why it did those things. So you can comprehend, in reality, not why class counsel, who favors the settlement, but why the district court itself looks at the settlement and says, this is fair, reasonable, and adequate. All right, counsel, your time is up. Thank you, Your Honor. Do the colleagues have any questions? Okay, thank you. Appreciate it. Good morning, Your Honor. May it please the Court, Derek Lozier for the class plaintiffs from the firm of Keller-Rorbach. The settling parties, as noted, have agreed to split their time with five minutes each. I'll try to be brief. There's not much time. It's, I think, important for the court to know and to recognize that this is the largest privacy class action settlement to date, and the most Facebook has ever paid to resolve a class action. I think it's also important to note that these gentlemen were not involved in the case. They weren't there, and they don't have the knowledge of what Judge Chabria actually did in this case. This case was a battle. It was heavily fought. There were dozens of hearings. Judge Chabria knew the case well. He knew the parties well. He knew the claims and defenses well. And as this Court has said many times, the district court judge is in the best position to evaluate the strengths and weaknesses of this case. That is precisely what Judge Chabria did. He noted in detail in his final approval order the 23E factors. He went through each one. He noted the materials that we presented, in which we provided 17 pages of assessment of the strengths and weaknesses of the case. And he also noted that he conducted his own review and determined that the settlement claims, the value was fairly accounted for the risks and challenges that the plaintiffs face, particularly with regard to the BPPA. Something that the objectors have said repeatedly, I didn't hear them say it today. Their objection, frankly, is a bit of a moving ball. But in their papers, they say repeatedly that this settlement is a 99.7 percent discount of the potential recovery in this case. That is not remotely true. As this Court made clear, there was no possibility that $625 billion of statutory damages would be awarded because it would violate due process. These counsel are making the same argument they made to you a year ago. It's as incorrect today as it was one year ago. Counsel, can you address counsel's point that Wakefield, that if the Court is to undertake – I'm not sure I quite followed – but if the Court is to undertake a statutory award analysis, that it has to start with a statutory maximum and work from there? Those four factors that he was pointing out. This Court has made very clear in Lane and in Rodriguez that it is not necessary to calculate a maximum, that those would be contingent and speculative calculations. And that would surely be the case here. As we noted in our papers to the Court, the range of damages is highly disputed and unclear, and that in order to conduct – even to conduct and calculate the total amount of statutory damages would be contingent and speculative and require resolution of factual issues, which this Court has said very clearly is not necessary. If you add to that the concept under Wakefield that somehow the district court is also supposed to, when evaluating the settlement, determine what the maximum statutory damage award the due process would allow, that's even more speculative and contingent than the underlying damage number itself. And it's clearly not what this Court has indicated. Counsel has said repeatedly in their papers that district courts need guidance on how to apply Wakefield. This Court provided very clear guidance in an appeal in which these objectors indicated the same issue was presented, and the district court did exactly what it's supposed to do with Wakefield. It noted that it was very unlikely, theoretically possible, that a large BPPA statutory damage award could be awarded, but that there would be due process problems, and therefore the claim can be discounted. The fact of the matter is there is no showing of any abuse of discretion. The Court did the exact sort of qualitative analysis that this Court has said many times is necessary to evaluate a settlement. This Court lived this case, breathed this case, and if anyone who's ever been in front of Judge Chabria knows that there's no free or easy pass on a class-action settlement. This he put us through our paces. We provided the Court with everything it needed to fully and fairly evaluate the claims. This is an outstanding result for the class. Let me ask you a quick question, if I may. I was a little bit surprised by the size of the attorney's fee award here. Now, I used to be a practicing lawyer. I believe lawyers ought to get fair compensation in difficult cases, but the settlement here is $725 million. The attorney's fee award would be 25 percent of that. That seems that looks to me like about $181 million in attorney's fees. Is that correct? Am I wrong? That is correct. And the district court was specifically raised and expressed skepticism about the benchmark in a case this size. He then evaluated the work that was done and determined that it was a reasonable fee in light of the results. But he also did what this Court has instructed many times. He performed a lodestar crosscheck. This case was a massive undertaking. We had 140,000 hours billed to this case and a $90 million lodestar. And when this Court has said there's no special rule for large class actions, instead, you look to see whether there was any windfall to the Plaintiff's counsel. And the lodestar crosscheck shows that there's no windfall because the multiplier is less than two, which, as the Court noted, is below the norm in class action cases. All right. Thank you. I think we understand the class's position, and we appreciate your argument. Thank you. We ask that you affirm the district court orders. Good morning, Your Honors. Chris Chorba on behalf of Defendant Facebook. I would just like to make two quick points. With respect to Judge Sanchez's question relating to Wakefield, I'd be remiss if I didn't note that Wakefield occurred not in the settlement context. And here, the statutory damages issue, including defenses to statutory damages, first, that they're not mandatory, that they're discretionary, whether they would be awarded at all. And second, as to the extrapolation that objectors are arguing would raise constitutional problems, those issues were vetted and those issues were considered by the district court. That's what this Court's precedents say a district court is required to do. And the Court in Rodriguez expressly rejected the notion that the Court's required to calculate a theoretical maximum and then come up with what it believes would be an appropriate discount based on it. Hamlin Factor 1 dictates that the Court is to evaluate the strength and weaknesses of the case, the potential recovery, and what the settlement provides. That is exactly what Judge Trabria did here. So Wakefield was an issue, but it wasn't required to sort of do this mathematical calculation. We would urge the Court to not change that precedent because it would hamstring district courts and it would be very difficult for any court in any case to come up with what it would view as the ideal percentage of recovery. And it would turn what is a discretionary process into a mathematical exercise. The only other point I would make is, again, this Court's precedents explicitly direct the district courts what to consider. Judge Trabria did that. It's at 1 ER 5 through 7. Walked through each of the Hamlin factors, evaluated it. He conducted a very lengthy final approval hearing. He considered all of the objections, weighed them, and approved the settlement as fair, reasonable, and adequate. The only other point I would ask is that this Court, if it were to address the attorney's fees, as we've argued in our brief, the settlement rises or falls independently of the attorney's fee award. The settlement is not contingent on the amount of attorney's fees. So we would ask the Court, if it were to address the attorney's fees, to affirm independently the class settlement. And that actually matters because we would allow the case to move forward. We would avoid further appellate proceedings. This case has been delayed considerably by these objections. And unless there are questions, I would submit on the papers. Thank you. All right. We've got three minutes for rebuttal. Thank you, Your Honors. John Pence on behalf of the appellants. Your question was, what did the Court do wrong here? What the Court did wrong was it used Wakefield as a complete defense to the statutory claims, as if it's a get-out-of-jail-free card. But class counsel actually argued in their brief that you need to look at what would at trial when you're considering these statutory claims. And what would happen at trial is illustrated by a couple of, or at least one of their cases that they cite. In Golan v. Free Eats, which I believe was a TCPA robocall case, the statutory recovery there at trial was reduced to 2 percent. Well, translating that to this case would result in a $5 billion settlement value or verdict. In Fraley, where there were $750 statutory penalties, the case settled for $15 a class member, which, you know, again, applied here would be $3.6 billion. The Court was required not simply to say, oh, well, we have statutory claims, they total in the hundreds of billions, but Wakefield. But Wakefield. So this is only a statutory damages case. That's what's different between this case and the Facebook case last year. In that case, class counsel had determined that the unjust enrichment was $90 million and that because they projected that their maximum recovery was 10 times that, that that settlement was a 10 percent settlement. So we did have mathematical precision there, despite class counsel or Mr. Chorba's assertion that you don't need that. And I would also argue that the past cases that say you don't have to consider the merits when approving a settlement, that's a bit of an overstatement, because when you're handicapping the claims themselves and determining their strengths and weaknesses, that is a forecast. You're looking ahead to the merits at trial, and you have to do the same thing with regard to the statutory damages. The Court should have asked itself, well, what would I do if, for example, plaintiffs were to recover $250 billion in this case? And the facts there, the facts that you need to apply to that question are not facts that are going to emerge from discovery. Most of them are already known. I mean, what could Facebook bear? What's their net worth and annual income? What have they paid before? They paid a $5 billion fine to the FTC for privacy violations. And what is necessary to deter them? Because that's one of the factors under the Wakefield test. This is really, in my view, more of a deterrence case than it is a compensation case. I mean, $3 per class member is not going to make a difference to anybody. And class counsel said in their brief, there are no actual damages here. This is strictly a statutory case. I see that my time has run out. Thank you, Your Honors. Thank you very much. I thank all counsel for your argument in this case. The matter of Feldman v. Facebook is now submitted.
judges: FORREST, SANCHEZ, Ezra